UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Ivey,                                    Civ. No. 05-2666 (JRT/FLN)

        Plaintiff,

        v.                                             **REPORT AND RECOMMENDATION**

Kevin Goodno and Dean Mooney,

        Defendants.

_____

Christopher Ivey, *Pro Se*
Theresa Meinholz Gray, Assistant Attorney General, for Defendants

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss [#10].  This matter has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. section 636 and Local Rule 72.1(c). Plaintiff Christopher Ivey filed this action pursuant to 42 U.S.C section 1983.  Based on the reasons stated herein, the Court recommends that Defendants' Motion to Dismiss [#10] be granted as to Counts One and Three and denied as to Counts Two, Four and Five.

## I.  BACKGROUND

### A.    Minnesota's Sex Offender Program and Minnesota Statute Section 246B.04

In 1993, the Minnesota Legislature enacted legislation to establish a secure facility for sex offenders in Moose Lake, Minnesota.  See Minn. Stat. § 246B.02.  There is also a Minnesota Sex Offender Program (hereinafter "MSOP" or the "Program") secure facility in St. Peter, Minnesota. The Program provides treatment to persons committed by the courts as sexual psychopathic personalities or sexually dangerous persons under the Minnesota Commitment and Treatment Act.

See Minn. Stat. § 246B.02; Minn. Stat. ch. 253B. "Sexual psychopathic personalities" are persons

whose conduct evidences an utter lack of power to control the person's sexual impulses. Minn. Stat.

§ 253B.02, subd. 18b. "Sexually dangerous persons" are persons who, because of their history and

condition, are likely to engage in acts of harmful sexual conduct. Minn. Stat. § 253B.02, subd. 18c.

In 2004, the Minnesota Legislature enacted Minnesota Statute section 246B.04, subdivision

2, entitled the "Ban on Obscene Material or Pornographic Work". Section 246B.04, subdivision 2,

provides:

> **Ban on obscene material or pornographic work.** The
> Commissioner shall prohibit persons civilly committed as sexual
> psychopathic personalities or sexually dangerous persons . . . from
> having or receiving material that is obscene as defined under section
> 617.241, subdivision 1,[1] material that depicts sexual conduct as
> defined under section 617.241, subdivision 1,[2] or pornographic work

---

[1]

Minnesota Statute section 617.241, subdivision 1(a) provides:

> "Obscene" means that the work, taken as a whole, appeals to the prurient interest
> in sex and depicts or describes in a patently offensive manner sexual conduct and
> which, taken as a whole, does not have serious literary, artistic, political, or
> scientific value. In order to determine that a work is obscene, the trier of fact must
> find: (i) that the average person, applying contemporary community standards
> would find that the work, taken as a whole, appeals to the prurient interest in sex;
> (ii) that the work depicts sexual conduct specifically defined by clause (b) in a
> patently offensive manner; and (iii) that the work, taken as a whole, lacks serious
> literary, artistic, political, or scientific value.

[2]

Minnesota Statute section 617.241, subdivision 1(b) provides:

> "Sexual conduct" means any of the following: (i) An act of sexual intercourse,
> normal or perverted, actual *or simulated*, including genital-genital, anal-genital, or
> oral-genital intercourse, whether between human beings or between a human being
> and an animal. (ii) Sadomasochistic abuse, meaning flagellation or torture by or
> upon a person who is nude or clad in undergarments or in a sexually revealing
> costume or the condition of being fettered, bound, or otherwise physically restricted
> on the part of one so clothed or who is nude. (iii) Masturbation, excretory functions,
> or lewd exhibitions of the genitals including any explicit, close-up representation
> of a human genital organ. (iv) Physical contact or *simulated* physical contact with
> the clothed or unclothed pubic areas or buttocks of a human male or female, or the
> breasts of the female, whether alone or between members of the same or opposite
> sex or between humans and animals in an act of apparent sexual stimulation or
> gratification. (Emphasis added)

-2-

as defined under section 617.246, subdivision 1,[3] while receiving services in any secure treatment facilities operated by the Minnesota sex offender program or any other facilities operated by the commissioner.

After Minnesota Statute section 246B.04, subdivision 2 was passed, the MSOP distributed a procedure entitled "Ban on Sexually Explicit, Obscene or Pornographic Materials" (hereinafter "Ban") that was created in order to comply with section 246B.04, subdivision 2.  (First Affidavit of Christopher Ivey (hereinafter "Ivey Aff.") Ex. D.)   The purpose of the Ban is to provide a "therapeutic living environment for patients in the . . . MSOP . . . to provide a safe and secure environment for all persons in MSOP facilities, and to comply with the provisions of Minnesota Statutes section 246B.04, subdivision 2 . . . by restricting patients from possessing sexually explicit, obscene or pornographic materials."  (Ivey Aff. Ex. D.)  The Ban became effective on November 3, 2004.  The Ban defines obscene material, pornographic material, and sexually explicit materials with reference to Minnesota Statute section 617.241, subd. 1.  (Ivey Aff. Ex. D.)  Specifically, the Ban defines "sexually explicit materials" by referencing the definition of "sexual conduct" in Minn. Stat. section 617.241, subd.1(b).  The Ban expands the definition of sexually explicit materials to

---

[3]

Minnesota Statute section 617.246, subdivision 1(f) provides:

> "Pornographic work" means: (1) an original or reproduction of a picture, film, photograph, negative, slide, videotape, videodisc, or drawing of a sexual performance involving a minor; or (2) any visual depiction, including any photograph, film, video, picture, drawing, negative, slide, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means that: (i) uses a minor to depict actual or simulated sexual conduct; (ii) has been created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct; or (iii) is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexual conduct.

include any "published materials featuring[4] nudity[5] or any non-published materials depicting nudity." (Ivey Aff. Ex. D at 3.)

The Ban states that it does not apply to any materials deemed to serve a legitimate rehabilitative purpose, any "motion picture movies rated 'G,' 'PG,' or 'PG-13' unless programmatically contraindicated for a specific patient as determined by the patient's treatment team"or to "[p]ublished materials that contain nudity illustrating medical or educational content . . . unless programmatically contraindicated for a specific patient as determined by the patient's treatment team." (Ivey Aff. Ex. D. at 3.) The Ban further states that "[a]ny patient who has used his computer -- or any other media source and/or equipment -- to store, view, disseminate or copy sexually explicit, obscene, or pornographic materials, will lose access to that computer, media source and equipment for a minimum period of one year." (Ivey Aff. Ex. D.) The Ban further states that "[d]uring the one-year time period and subsequent review period, any media item deemed to be critical contraband cannot be replaced with an alternate similar item." (Ivey Aff. Ex. D.)

## B.      Plaintiff's Suit

Plaintiff is committed to the Minnesota Sex Offender Program ("MSOP") in St. Peter, Minnesota, as a Sexually Psychopathic Personality and a Sexually Dangerous Person.[6] Plaintiff alleges that he received a copy of the Ban dated November 3, 2004. (Compl. ¶¶ 18-19.) Thereafter

---

[4] "Featuring" is defined as "containing depictions of nudity on a routine or regular basis (in the case of magazines or other periodicals) or promotes itself based upon such depiction (in the case of one-time publications). (Ivey Aff. Ex. D at 2.)

[5] "Nudity" is defined as "the showing (including a see-through covering) of human male or female genitals or pubic areas, a human anus, or female breasts below the top of the areola. Examples of see-through coverings that are not permitted include 'pasties,' lace, mesh or body paint through which the covered area is visible." (Ivey. Aff. Ex. D at 2.)

[6] See In re Christopher Ivey, 687 N.W.2d 666, 667 (Minn.Ct. App. 2004).

-4-

Plaintiff alleges that he deleted several images from the hard drive of his personal computer that, while not obscene, were considered critical contraband under the new policy.  (Compl. ¶21.)

Plaintiff further alleges that, when he was transferred from the MSOP in Moose Lake to the MSOP in St. Peter, his computer was given to the information technology specialists for review, and on October 12, 2005, Plaintiff was informed that he would not be receiving his computer back because it contained 'nudity' as defined by the Ban.  (Compl. ¶¶ 25-26.)  Plaintiff alleges that the 'nudity' consisted of a collection of <u>Playboy</u> magazine covers from the magazine's first fifty years. (Compl. ¶ 27.)  Plaintiff alleges that he was informed that the punishment for possessing this nudity on his computer, in violation of the Ban, was loss of access to his privately-owned computer for a minimum of one year and his inability to utilize another patient's computer during that time. (Compl. ¶ 26.)

Plaintiff initiated this action under 42 U.S.C. § 1983 against Defendants Kevin Goodno, the Commissioner of Human Services, and Dean Mooney, the Director of the Minnesota Sex Offender Program, in their individual and official capacities, alleging violations of his civil rights [#1]. Specifically, in Count One Plaintiff alleges that Minnesota Statute section 246B.04, subd. 2 is unconstitutional on its face and as applied to Plaintiff because it violates the Due Process and Equal Protection Clauses of the Fourteenth Amendments and Article 1, Section 2 of the Minnesota Constitution.  In Count Two Plaintiff alleges that Minnesota Statute section 246B.04, subd. 2 is unconstitutional, on its face and as applied to Plaintiff, on the grounds that the statute violates the First Amendment.  In Count Three Plaintiff alleges that Minnesota Statute section 617.241, subd. 1(b) is unconstitutional on its face and as applied to all Minnesota citizens, on the grounds that it is overly broad and vague in violation the First Amendment.  In Count Four Plaintiff alleges that

Defendants' Ban on Sexually Explicit and Obscene Material is unconstitutional, on its face and as applied to Plaintiff, on the grounds that it is overly broad and vague in violation of the First Amendment. Finally, in Count Five, Plaintiff alleges that Defendants' Ban on Sexually Explicit and Obscene Material is unconstitutional, on its face and as applied to Plaintiff, on the grounds that it violates the Fourteenth Amendment by setting forth an indeterminate punishment for non-criminal behavior. Plaintiff seeks a declaratory judgment finding section 246B.04, subdivision 2, Minnesota Statute section 617.241, subd. 1(b) and the Ban unconstitutional, and an order enjoining Defendants from implementing section 246B.04, subdivision 2, Minnesota Statute section 617.241, subd. 1(b) or the Ban. (Compl. ¶ 1.)

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted [#10]. Defendants argue that Plaintiff's First Amendment claim fails as a matter of law because section 246B.04 is reasonably related to the state's legitimate institutional interests. Defendants argue that Plaintiff's First Amendment claim fails as a matter of law with respect to the Ban, as the Ban is reasonably related to the state's legitimate institutional interests. Defendants argue that Count One fails to state a claim that section 246B.04, subd. 2 violates Plaintiff's equal protection rights because Plaintiff has not sufficiently demonstrated that he was treated differently than others who are similarly situated. Defendants further argue that Count One fails to state a claim that Section 246B.04, subd. 2, violates Plaintiff's right to due process because "no authority requires the MSOP to provide a jury trial every time it restricts a patient's access to certain materials or confiscates a patient's computer that contains banned images" and because "the restrictions [Plaintiff] complains of are of a *de minimus* nature, they are related to a legitimate government interest in rehabilitating patients and maintaining

order in the Program, and they do not amount to punishment." (Defs' Mem. at 25; 28.) Defendants argue that Count Five fails to state a claim that the Ban violates Plaintiff's Fourteenth Amendment due process rights, because the "limitations on what materials [Plaintiff] can possess and the computer restrictions are of such a *de minimus* nature that the Constitution is not even concerned" and because Plaintiff fails to alleged "any expressed intent on the part of the Defendants to punish him by restricting his access to his computer and materials depicting obscenity or nudity." (Def.'s Mem. at 31-32.)  Finally, Defendants argue that Count Three of Plaintiff's complaint is frivolous, as Minnesota Statute section 246B.04, subd. 2, passes constitutional muster.

For the reasons that follow, the Court recommends that Defendants' Motion to Dismiss [#10] be granted as to Counts One and Three and denied as to Counts Two, Four and Five.

## II.  STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must take the facts alleged in the complaint as true, and must construe the pleadings in the light most favorable to the nonmoving party.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.1994); Ossman v. Diana Corp., 825 F.Supp. 870, 879-80 (D. Minn.1993).  The court may only consider the facts alleged in the complaint and material attached to the complaint that form part of the pleadings. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986).  A motion to dismiss should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

*Pro se* pleadings should be liberally construed, and are held to a less stringent standard when

challenged by motions to dismiss.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Horsey v.

Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984).  Although it is to be liberally construed, a *pro se*

complaint must still contain specific facts to support its conclusions.  Kaylor v. Fields, 661 F.2d

1177, 1183 (8th Cir.1981).

42 U.S.C. Section 1983 "is not itself a source of substantive rights," but rather provides "a

method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144,

n. 3 (1979).  In order to proceed with a claim under 42 U.S.C. Section 1983, the plaintiff must

"identify the specific constitutional right allegedly infringed."   Albright v. Oliver, 510 U.S. 266,

271 (1994) (citing Graham v. Connor, 490 U.S. 386, 394 (1989); Baker v. McCollan, 443 U.S. at

140)).

### III.  DISCUSSION

#### A.      Minnesota Statutes Are Presumed Constitutional

As an initial matter, the Court notes that Plaintiff bears a heavy burden in proving that

section 246B.04 and section 617.241 are unconstitutional.   Minnesota statutes are presumed

constitutional.  See McGuire v. C & L Restaurant, Inc., 346 N.W.2d 605, 611 (Minn. 1984).  A court

must proceed with extreme caution before declaring a statute unconstitutional and may do so only

when absolutely necessary.   In re Haggerty, 448 N.W.2d 363, 364 (Minn. 1989).   The party

challenging the constitutionality of a statute must prove beyond a reasonable doubt that the statute

violates a constitutional provision.  Id. at 364.

#### B.      Count One Fails to State a Fourteenth Amendment Claim with Regard to Minnesota Statute Section 246B.04, Subdivision 2.

In Count One Plaintiff alleges that Minnesota Statute section 246B.04, subd. 2 is

unconstitutional on its face and as applied to Plaintiff because it violates the Equal Protection and

Due Process Clauses of the Fourteenth Amendments and Article 1, Section 2 of the Minnesota Constitution.

> **1.     Count One Fails To State A Claim That Minnesota Statute Section 246B.04, Subdivision 2, Violates Plaintiff's Equal Protection Rights.**

The Fourteenth Amendment states, in part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.[7] This provision has been interpreted by the United States Supreme Court as requiring the government "to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). In order to state a valid equal protection claim, Plaintiff must demonstrate that he "has been treated differently than others similarly situated" to him. Rouse v. Benson, 193 F.3d 936, 942 (8th Cir.1999) (citing Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir.1994), cert. denied, 513 U.S. 1185 (1995)). "Absent a threshold showing that [the plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." Klinger, 31 F.3d at 731.

Count One states:

> Minn. Stat. § 246B.04, subd. 2 (2004), on its face and as applied to Plaintiff, is unconstitutional on the grounds that the statute violates both the due process and equal protection clauses under the Fourteenth Amendment and Article 1, § 2 of the Minnesota Constitution, in that it does not provide for a jury determination, such as provided to all other citizens under the two criminal statutes which section 246B.04, subd. 2 refers to, of whether a work in question is 'obscene' before consequences ensue and First Amendment protections are stripped from such media, instead giving Defendants and their agents unfettered discretion to arbitrarily prohibit media which they themselves determine 'obscene.'

---

[7]Article one, section two of the Minnesota Constitution has been analyzed under the same principles as the Federal Equal Protection Clause. See Scott v. Minneapolis Police Relief Ass'n, 615 N.W.2d 66, 74 (Minn.2000).

(Compl. ¶ 82.)

Nowhere within Count One does Plaintiff make the threshold showing that he was treated differently than others similarly situated to him.[8]  Therefore, Plaintiff cannot make a threshold showing that he was treated differently than others similarly situated to him, and Defendants' Motion to Dismiss the Equal Protection portion of Count One should be granted.

**2.      Count One Fails To State A Claims That Minnesota Statute Section 246B.04, Subdivision 2, Violates Plaintiff's Due Process Rights.**

Plaintiff states that his due process claim in Count One is a claim that Defendants violated his substantive due process rights.  See Pl.'s Mem. in Opp. at 15.  The United States Supreme Court has noted that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [those] claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see also Moran v. Clarke, 296 F.3d 638, 646 (8th Cir.2002).  In the present case, the First Amendment provides an "explicit textual source of constitutional protection" against the governmental restriction of protected speech, such that the First Amendment, and "not the more generalized notion of 'substantive due process'" should be the guide for analyzing Plaintiff's claims in Count One.  Id.  Therefore, Plaintiff cannot state a claim under the substantive due process clause

---

[8] Plaintiff filed a third affidavit in conjunction with his opposition memorandum that alleges that patients confined to the "Special Needs Unit" are not subject to Defendants' Ban. However, this affidavit was not referenced in, or attached to, his complaint, and Defendants' object to converting this motion into one for summary judgment.  Defendants have not offered any evidence beyond the pleadings in support of their motion; therefore, it would be improper for the Court to consider Plaintiff's third affidavit when determining Defendants' motion to dismiss.

of the Fourteenth Amendment, and the Court recommends that Defendants' Motion to Dismiss be granted as to Count One.

### C.   Count Three Fails To State A Claim That Minnesota Statute Section 617.241, Subdivision 1(b) Violates the First Amendment.

In Count Three Plaintiff alleges that Minnesota Statute section 617.241, subd. 1(b) is unconstitutional on its face and as applied to all Minnesota citizens, on the grounds that it is overly broad and vague in violation the First Amendment.  Specifically, Plaintiff alleges that Minnesota Statute section 617.241, subd. 1(b) is unconstitutional

> on its face and as . . . [applied], having already defined as severable by the Minnesota legislature through their enactment of Minn. Stat. § 246B.04, subd. 2 (2004), in that it defines such non-sexual things as modern dance and conduct portrayed in the majority of movies and video games as 'sexual conduct,' without regarding the work as a whole, in violation of the First Amendment.

(Compl. ¶ 88.)

Plaintiff fails to state a claim that Minnesota Statute Section 617.241, subdivision 1(b) violates the First Amendment.  Plaintiff appears to argue that, because Minn. Stat. § 246B.04, subd. 2 uses Minn. Stat. § 617.241, subd. 1(b) to define the sexual conduct that Minn. Stat. § 246B.04, subd. 2 prohibits, Minn. Stat. § 617.241, subd. 1(b) violates the First Amendment.  However, this argument is flawed.  Minn. Stat. § 617.241, subd. 1 defines "obscene materials and performances." See n. 1, supra.  Minn. Stat. § 617.241, subd. 1(a) defines obscenity, and subd. 1(b) defines the term sexual conduct as it is used within the definition of obscenity.  Minn. Stat. § 617.241, subd. 1 does not define "such non-sexual things as modern dance and conduct portrayed in the majority of movies and video games as 'sexual conduct,' without regarding the work as a whole, in violation of the First Amendment."  (Compl. ¶ 88.)  Minn. Stat. § 617.241, subd. 1(a) defines obscenity according to the United State Supreme Court's holding in Miller v. California, 413 U.S. 14, 23-24 (1973).  In Miller

-11-

the Supreme Court held that

> [s]tate statutes designed to regulate obscene materials must be carefully limited . . . As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

Id. at 23-24.  Minn. Stat. § 617.241 subd. 1(a) defines obscenity in this exact way.  Minn. Stat. § 617.241 subd. 1(b) defines "sexual conduct" in relation to the definition of obscenity in subdivision 1(a), and it does not outlaw "sexual conduct" in its own right.  The only point at which the "sexual conduct" defined in subdivision 1(b) is outlawed under section 617.241 is when that sexual conduct arises under the circumstances announced in subdivision 1(a).  As such, Minn. Stat. § 617.241 is constitutional, and Count Three fails to state a claim upon which relief may be granted.  Therefore, the Court recommends that Defendants' Motion to Dismiss be granted with respect to Count Three.

**D.    Assuming Without Deciding That <u>Turner v. Safely</u> is the Appropriate Standard to Use in the Present Case, Plaintiff Has Successfully Stated a Claim in Counts Two and Four Such That Defendants' Motion to Dismiss Counts Two and Four Should Be Denied.**

The first step in any constitutional analysis requires a determination of what standard to apply to the case.  Defendants argue that the standard announced in <u>Turner v. Safely</u>, 482 U.S. 78 (1987) is the appropriate standard to evaluate Plaintiff's First Amendment claims in the present case.[9]  In <u>Turner</u>, the Supreme Court acknowledged that "courts are ill-equipped to deal with the

---

[9] Defendants note, and the Court agrees, that it is undisputed under established First Amendment law that "obscene" materials and "pornographic work," as defined by Minn. Stat. § 167.241, subd. 1 and Minn. Stat. § 617.246, subd. 1(f), respectively, are unprotected speech.  <u>See</u> <u>Osborne v. Ohio</u>, 495 U.S. 103 (1990)(child pornography is unprotected speech); <u>Miller v. California</u>, 413 U.S. 14, 23 (1973)(obscenity is unprotected speech).  Therefore, the following analysis focuses solely on the extent to which Minn. Stat. § 246B.04, subd. 2 and the Ban reach

-12-

increasingly urgent problems of prison administration and reform." Id. at 84 (quoting Procunier v. Martinez, 416 U.S. 396, 405 (1974)).  Accordingly, the Court set out to formulate a standard of review for prisoners' constitutional claims to laws, policies and regulations governing prison management that responded to the "'policy of judicial complaints and [to] the need to protect constitutional rights.'"  Id. (quoting Martinez, 416 U.S. at 406).  The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Id. at 89.

The Court assumes, without deciding, that Turner represents the appropriate standard within which to evaluate constitutional claims advanced by a person civilly committed as a sexual psychopathic personality or a sexually dangerous person under the Minnesota Commitment and Treatment Act.  Therefore, the Court will proceed to analyze Plaintiff's First Amendment claims regarding Minn. Stat. § 246B.04, subd. 2 and the Ban under the Turner analysis.

In order to determine whether the regulations at issue in the present case are reasonably related to legitimate therapeutic or institutional interests, the Court must weigh four factors: 1) whether there is a "valid, rational connection" between the regulation and "the legitimate governmental interest put forward to justify it"; 2) whether Plaintiff has alternative means of exercising his First Amendment rights; 3) the impact that accommodation of his First Amendment rights would have on guards and other patients, and on the allocation of the general resources of the institution; and 4) whether obvious, easy alternatives exist to meet the state's objectives.  See Turner, 482 U.S. at 89-91.

Under Minn. Stat. § 246B.04, subd. 2, persons committed as sexual psychopathic

---

sexual expression that is not obscene and does not contain child pornography.

personalities or sexually dangerous persons are prohibited from possessing "material that depicts sexual conduct as defined under section 617.241, subdivision 1." Minn. Stat. § 246B.04, subd. 2. In Count Two Plaintiff argues that Minn. Stat. § 246B.04, subd. 2

> violates the First Amendment . . . by banning constitutionally protected speech, in that it severs and considers separate 'sexual conduct' as defined by Minn. Stat. § 617.241, subd. 1(b), a portion of the statute which described protected speech and expression when considered alone, from material considered 'obscene' as defined by Minn. Stat. § 617.241, subd. 1(a), which describes speech and expression that a jury might determine to be obscene and, therefore, potentially unprotected speech and expression.

(Compl. ¶ 85.)

Under the Ban, patients in the MSOP are prevented from possessing "sexually explicit materials," which are defined by reference to the definition of "sexual conduct" provided in Minn. Stat. § 617.241, subd. 1(b). (Ivey Aff. Ex. D at 2.) In addition, the Ban defines sexually explicit materials to include any materials "featuring" "nudity." (Ivey Aff. Ex. D. at 2.) "Nudity" is defined as "the showing (including a see-through covering) of human male or female genitals or pubic areas, a human anus, or female breasts below the top of the areola." (Ivey Aff. Ex. D. at 2.) In Count Four Plaintiff argues that the Ban is unconstitutional

> on the grounds that it violates the First Amendment . . . in that this overly broad and vague ban on certain sexually oriented materials impinges upon Plaintiff's protected speech and gives Defendants unfettered discretion to arbitrarily prohibit certain forms of protected speech and expression. Plaintiff also challenges Defendants' Ban because it does not comport to the Minnesota Statutes that it claims authority under.

(Compl. ¶91.)

In order to determine whether Plaintiff has stated a claim upon which relief may be granted, the Court must examine the Turner factors as they apply to the facts of the present case.

**1.      Neither the Ban nor Minnesota Statute Section 246B.04, subdivision 2, are Rationally Related to Legitimate Government Interests.**

Defendants argue that Minn. Stat. § 246B.04, subd. 2, on its face, and the Ban, further "at least two legitimate goals: 1) to create and maintain an atmosphere that is conducive to the therapeutic goals of treating Minnesota's most dangerous and compulsive sex offenders; and 2) to reduce the danger of sexual aggression toward other civilly committed patients or staff members." (Def.'s Mem. at 15; see also Ivey Aff. Ex. D. at 2.)

In determining whether a certain provision is rationally related to a legitimate government interest, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Id. at 89-90. Furthermore, "the governmental objective must be a legitimate and neutral one . . . [and] it [is] important to inquire whether . . . regulations restricting inmates' First Amendment rights operate[ ] in a neutral fashion, without regard to the content of the expression." Id. at 90.

In the present case, to the extent that the Ban and Minn. Stat. § 246B.04, subd. 2 prohibit all media that meets the definition of "sexual conduct" in Minn. Stat. § 617.241, subd. 1(b), and to the extent that the Ban prohibits all materials featuring "nudity" as that term is defined within the Ban, Plaintiff has sufficiently stated a claim that these regulations are overbroad and therefore violate the First Amendment.  Both the Ban and Minn. Stat. § 246B.04, subd. 2 prohibit a wide array of sexual expression, including a simulated act of sexual intercourse and "simulated physical contact with the clothed or unclothed pubic areas or buttocks of a human male or female, or the breasts of the female . . . in an act of apparent sexual stimulation or gratification."  Minn. Stat. § 617.241, subd. 1(b)(i) and (iv).  In addition, the Ban prohibits the possession of materials featuring nudity, and nudity is defined very broadly to include "the showing (including a see-through covering) of human male or female genitals or pubic areas, a human anus, or female breasts below the top of the areola."  (Ivey

Aff. Ex. D at 2.)  To the extent that the Ban and the statute prohibit all media that meets its definitions of sexual conduct and sexually explicit materials, Plaintiff has stated a claim that those regulations are not reasonably related to any legitimate therapeutic or institutional interests advanced by Defendants.  The Ban and the statute prohibit a wide array of sexual expression that is protected speech under the First Amendment.  The Ban is so restrictive that it requires an "exemption" section that states that the Ban does not apply to "[m]otion pictures rated 'G,' 'PG,' or 'PG-13,' *unless* programmatically contraindicated for a specific patient as determined by the patient's treatment team." (Ivey Aff. Ex. D at 3)(emphasis added.)  In essence, the Ban acts to relegate Plaintiff to viewing materials that are suitable for children, and only then if these materials are not "programmatically contraindicated for a specific patient as determined by the patient's treatment team." (Ivey Aff. Ex. D at 3.)  The Ban and the statute do not appear to be rationally related to the creation and maintenance of "an atmosphere that is conducive to the therapeutic goals of treating Minnesota's most dangerous and compulsive sex offenders" nor do these regulations appear to be rationally related to the reduction of "the danger of sexual aggression toward other civilly committed patients or staff members." (Def.'s Mem. at 15; see also Ivey Aff. Ex. D. at 2.)  Therefore, viewing the pleadings in the light most favorable to Plaintiff, Plaintiff has successfully stated a claim that the Ban and the statute are overbroad, as they are not rationally related to the government interests advanced to support them.

>   **2.      Plaintiff Does Not Appear To Have Alternative Means of Exercising His First Amendment Rights.**

Defendants argue that, in the present case, Plaintiff has other avenues available to him

because "he can 'still receive a broad range of non-pornographic books, magazines and other printed materials.'" (Def.'s Mem. at 21)(quoting <u>Miller v. Karasch</u>, No. 3:95cv292, Report and Recommendation at 8 (D.Minn. May 27, 1997) (Noel, Magistrate Judge) (attached as Ex. 7 to Gray Aff.)) Defendants further argue that "the statute and [Ban] do not ban all publications that include content of a sexual nature.  Thus, [Plaintiff's] right to receive other publications constitutes a meaningful alternative to receiving materials prohibited under the statute or [Ban]."  (Def.'s Mem. at 22.)

The Court disagrees with Defendants' assertion that the statute and the Ban do not prohibit all publications that include content of a sexual nature.  The statute prohibits Plaintiff from "having or receiving material that . . . depicts sexual conduct as defined under section 617.241, subdivision 1."  Minn. Stat. § 246B.04, subd. 2.  "Material" is defined by the Ban as including, but not limited to,

> pictures, personal or published photographs, drawings, magazines, books, periodicals, publications, pamphlets, newsletters, newspapers, papers, writings, cards, advertisements, circulars, movies, sound recordings, videotapes, videodiscs, scripts, slides, statues, negatives, images, video games and computer media, including software, documents, computer-generated images or pictures, whether made or produced by electronic, mechanical, or other means and in any form or format.

(Ivey Aff. Ex. D at 1.)  The Ban states that "sexually explicit materials includes materials depicting" any act of sexual conduct as described in Minn. Stat. § 617.241 subd. 1(b), as well as "published materials featuring nudity or non-published materials depicting nudity."  (Ivey Aff. Ex. D at 3.) "Featuring" is defined by the Ban as "containing depictions of nudity on a routine or regular basis (in the case of magazines or other periodicals) or promotes itself based upon such a depiction ( in the case of one-time publications)."  (Ivey Aff. Ex. D at 2.)  "Depict" is defined in the American

Heritage Dictionary as "1. To represent in a picture or sculpture.  2. To represent in words; describe." AMERICAN HERITAGE DICTIONARY 383 (2d College ed. 1982).

It is hard to determine exactly how Defendants can claim that the statute and Ban do not ban all publications that include content of a sexual nature.  The Ban does provide two exemptions to this policy, that is, the exemption for "motion picture movies rates 'G,' 'PG,' and PG-13,'" and the exemption for "[p]ublished materials that contain nudity illustrating medical or educational content, such as medical textbooks or medical journals and the *National Geographic* magazine;" however, these exemptions are not valid if the exempted materials are deemed "programmatically contraindicated for a specific patient as determined by the patient's treatment team."  (Ivey Aff. Ex. D at 3.)  Therefore, viewing the pleadings in the light most favorable to Plaintiff, Plaintiff has stated a claim that he does not have an alternative means of exercising his First Amendment rights under the statute and Ban in effect in the present case.

> **3.    Accommodating Plaintiff's First Amendment Rights Would Have Minimal Impact on Guards, Other Patients, and the Allocation of the General Resources of the Institution.**

Defendants argue that "accommodating the right claimed by allowing patients access to publications that depict sex acts or nudity would have an adverse impact on the treatment and rehabilitation of patients, as well as on facility security." (Def.'s Mem. at 23.)  However, the Court has concluded that the statute and Ban may not be rationally related to the interests Defendants' advance; specifically, that the prohibitions contained in the statute and the Ban promote the treatment and rehabilitation of patients and the security of the institution.  In addition, under the present Ban and statute, every material that enters the facility is inspected to determine whether it contains prohibited content.   Therefore, a more rational regulation would actually be less

burdensome to the facility, as staff would not be required to review every material that entered the facility for prohibited content.  Even if a more rational regulation would require staff to review every material that entered the facility to determine whether that material was prohibited, the staff at the facility would not experience an increased burden as a result, because facility staff already inspect all materials that enter the facility.

>    **4.     Plaintiff Has Stated a Claim that the Statute and the Ban Represent an Exaggerated Response to the Treatment Program's Legitimate Interests.**

The fourth factor in the <u>Turner</u> analysis requires a determination of whether there are alternatives that can accommodate the right at de minimis cost to valid penological interests.  <u>Turner</u>, 482 U.S. at 91.  When testing a statute, a court must only inquire whether the law is not an exaggerated response to the treatment program's legitimate interest in advancing patient treatment goals and maintaining facility security.  <u>See</u> <u>Turner</u>, 482 U.S. at 90-91.

In the present case, it is unclear whether the statute and the Ban are an exaggerated response to the treatment program's legitimate interest in advancing patient treatment goals and maintaining facility security.  The Ban and the statute encompass a wide array of materials that depict "sexual conduct" and it appears that the statute may be an exaggerated response to the treatment program's legitimate interests in advancing patient treatment goals and maintaining facility security.

Looking at the <u>Turner</u> factors as a whole, and viewing the pleadings in the light most favorable to the Plaintiff, Plaintiff has stated a claim that Minn. Stat. § 246B.04, subd. 2, and the Ban are overbroad and violate the First Amendment.  Therefore, the Court recommends that Defendants' Motion to Dismiss be denied with respect to Count Two and Count Four.

>    **E.     Count Five States a Claim Upon Which Relief May Be Granted; Therefore, the Court Recommends that Defendants' Motion to Dismiss Be Denied as to Count Five.**

In Count Five, Plaintiff alleges that Defendants' Ban on Sexually Explicit and Obscene Material is unconstitutional, on its face and as applied to Plaintiff, "on the grounds that it violates the Fourteenth Amendment by setting forth an indeterminate punishment for non-criminal behavior." (Compl. ¶ 94.)   Plaintiff alleges that "any punishment of a civilly committed person is unconstitutional except when ordered by a court of law following determination of guilt and conviction of a crime."  (Compl. ¶ 94.)

Both Plaintiff and Defendants state that the appropriate standard within which to evaluate the claims advanced in Count Five is the standard announced by the United States Supreme Court in Bell v. Wolfish,  441 U.S. 520 (1979).  In Bell the Court was asked to determine whether "particular restrictions and conditions accompanying pretrial detention amount[ed] to punishment in the constitutional sense of that word." Id. at 538.  The Bell Court stated that, when determining whether a particular restriction or condition accompanying pretrial detention amounted to punishment, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  The Bell Court noted that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it.]'" Id. at 538 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).

The Bell Court concluded that

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'  Conversely, if a restriction or condition is not reasonably related to

-20-

> a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

Id. at 539.  The Bell Court also noted that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Id. at 540.

In the present case, the Ban states that "[a]ny patient who has used his computer--or any other media source and/or equipment--to store, view, disseminate or copy sexually explicit, obscene or pornographic materials, will lose access to that computer, media source and equipment for a minimum of one year."  (Ivey Aff. Ex. D at 4.)  The Ban further states that "[d]uring the one-year time period and subsequent review period, any media item deemed to be critical contraband cannot be replaced with an alternate similar item.  For example, a computer cannot be replaced with a different computer."  (Ivey Aff. Ex. D at 4.)  Defendants argue that "[t]he Program has legitimate health and safety reasons for searching a patient's property for contraband and confiscating items that may compromise the safety and treatment of others."  (Def.'s Mem. at 32.)  Defendants argue that "[i]f this ability . . . were restricted, the security of residents, staff, and visitors at the Program would be seriously compromised."  (Def.'s Mem. at 32.)  In addition, Defendants argue that the MSOP has

> obligations to provide a therapeutic environment by deterring unlawfulness and establishing an ordered environment . . . [that] the rules permit the Program to impose disciplinary restrictions for patients who violate the Program's rules of behavior . . . [and that if] the Program failed to enforce laws and its own rules of behavior, it would invite anarchy, disorder and dangerous behavior.

(Def.'s Reply Mem. at 8.)

The Court concludes that Plaintiff has stated a claim that the removal of a computer used to store sexually explicit materials, for a minimum of one year, is not reasonably related to a legitimate government interest.  There is an issue of fact as to whether the removal of the computer for an indeterminate period of time, that includes a minimum of one year, is reasonably related to the MSOP's interest in confiscating items that may compromise the safety and treatment of others.  Once the offensive images are removed from the hard drive of the computer, it is arguable that the government's interest in confiscating harmful items has been served.  Therefore, the Court recommends that Defendants' motion to dismiss be denied as to Count Five, because viewing the pleadings in the light most favorable to Plaintiff, Plaintiff has stated a claim that the Ban sets forth an indeterminate punishment for non-criminal behavior, in violation of the Fourteenth Amendment.

In addition, Plaintiff argues that he has a substantive due process property right to have a computer in his room based on Minnesota Statute section 144.652, subd. 22.  Minnesota Statute section 144.652, subd. 22 states that "Patients and residents may retain and use their personal clothing and possessions as space permits . . . unless medically or programmatically contraindicated for documented medical, safety, or programmatic reasons."  However, Minnesota Statute section 235B.185, subd. 7 qualifies Minnesota Statute section 144.652 in that it states that the rights announced in Minnesota Statute section 144.652, subd. 22 "may be limited only as necessary to maintain a therapeutic environment or the security of the facility or to protect the safety and well-being of patients, staff, and the public."  Minn. Stat. § 235B.185, subd. 7.  Minnesota Statute section 144.652, subd. 22 does not, by itself, convey a protected property interest to Plaintiff, as that statute is qualified by 235B.185, subd. 7.  Therefore, the Court concludes that there is no genuine issue of material fact as to whether Minnesota Statute section 144.652, subd. 22 conveys a protected

property interest to Plaintiff to retain his computer, and any such claim regarding the seizure of Plaintiff's computer must be advanced in the context of the discussion of whether the taking of Plaintiff's computer for a minimum of one year constitutes punishment.  To the extent that Count Five advances a claim for a violation of his substantive due process property right based on Minnesota Statute section 144.652, subd. 22, the Court recommends that Defendants' motion to dismiss be granted.  To the extent that Count Five advances a claim that the seizure of Plaintiff's computer for a minimum of one year constitutes punishment in violation of the Fourteenth Amendment, the Court recommends that Defendants' motion to dismiss be denied.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss [#10] be **GRANTED in part** and **DENIED in part** as follows:

1.    Defendants' Motion to Dismiss [#10] should be **GRANTED** with respect to Counts One and Three.

2.    Defendants' Motion to Dismiss [#10] should be **DENIED** with respect to Counts Two, Four and Five.

DATED: August 17, 2006                    s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 6, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.