UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Ivey,                                    Civil No. 05-2666 (JRT/FLN)

       Plaintiff,

       v.                                       **REPORT AND RECOMMENDATION**

Cal Ludeman and Dean Mooney,

       Defendants.

_____

Christopher Ivey, *Pro Se*
Margaret H. Chutich, Assistant Attorney General, for Defendants

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Plaintiff's Notice of Motion and Cross-Motion for Summary Judgment[#81] and Defendants' Motion for Summary Judgment [#82]. This matter has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. Section 636 and Local Rule 72.1(c). The only issue before the Court is the constitutionality of Minnesota Statute Section 246B.04, subdivision 2 on its face and as applied. (*See* Order, Docket No. 73.) Based on the reasons stated herein, the Court recommends that Defendants' Motion for Summary Judgment [#82] be granted and Plaintiff's Notice of Motion and Cross-Motion for Summary Judgment[#81] be denied.

## I. BACKGROUND

### A.    Minnesota's Sex Offender Program and Minnesota Statute Section 246B.04

In 1993, the Minnesota Legislature enacted legislation to establish a secure facility for sex offenders in Moose Lake, Minnesota. *See* Minn. Stat. § 246B.02. There is also a Minnesota Sex Offender Program (hereinafter "MSOP" or the "Program") secure facility in St. Peter, Minnesota.

The Program provides treatment to persons committed by the courts as sexual psychopathic personalities or sexually dangerous persons under the Minnesota Commitment and Treatment Act. *See* Minn. Stat. § 246B.02; Minn. Stat. ch. 253B.  "Sexual psychopathic personalities" are persons whose conduct evidences an utter lack of power to control the person's sexual impulses.  Minn. Stat. § 253B.02, subd. 18b.  "Sexually dangerous persons" are persons who, because of their history and condition, are likely to engage in acts of harmful sexual conduct.  Minn. Stat. § 253B.02, subd. 18c.

In 2004, the Minnesota Legislature enacted Minnesota Statute Section 246B.04, subdivision 2 entitled the "Ban on Obscene Material or Pornographic Work".  Section 246B.04, subdivision 2 provides:

> **Ban on obscene material or pornographic work.**  The Commissioner shall prohibit persons civilly committed as sexual psychopathic personalities or sexually dangerous persons . . . from having or receiving material that is obscene as defined under section 617.241, subdivision 1,[1] material that depicts sexual conduct as defined under section 617.241, subdivision 1,[2] or pornographic work

---

[1]

Minnesota Statute section 617.241, subdivision 1(a) provides:

> "Obscene" means that the work, taken as a whole, appeals to the prurient interest in sex and depicts or describes in a patently offensive manner sexual conduct and which, taken as a whole, does not have serious literary, artistic, political, or scientific value. In order to determine that a work is obscene, the trier of fact must find: (i) that the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest in sex; (ii) that the work depicts sexual conduct specifically defined by clause (b) in a patently offensive manner; and (iii) that the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

[2]

Minnesota Statute section 617.241, subdivision 1(b) provides:

> "Sexual conduct" means any of the following: (i) An act of sexual intercourse, normal or perverted, actual *or simulated*, including genital-genital, anal-genital, or oral-genital intercourse, whether between human beings or between a human being and an animal. (ii) Sadomasochistic abuse, meaning flagellation or torture by or upon a person who is nude or clad in undergarments or in a sexually revealing costume or the condition of being fettered, bound, or otherwise physically restricted on the part of one so clothed or who is nude. (iii) Masturbation, excretory functions, or lewd exhibitions of the genitals including any explicit, close-up representation of a human genital organ. (iv) Physical contact or *simulated* physical contact with

as defined under section 617.246, subdivision 1,[3] while receiving services in any secure treatment facilities operated by the Minnesota sex offender program or any other facilities operated by the commissioner.

In November 2004, the MSOP distributed a procedure entitled "Ban on Sexually Explicit, Obscene or Pornographic Materials" ("the 2004 Ban") that was created in order to comply with Section 246B.04, subdivision 2.  (Mooney Aff., ¶7.)  The 2004 Ban was the subject of a litigation brought by another patient of the MSOP, Clark A. Kruger.  (*Id*. ¶8.)  As a result of a settlement in the litigation brought by Kruger, the 2004 Ban was superceded by a policy titled "Media Possession By Patients in the Minnesota Sex Offender Program" ("the 2007 Policy").   The purpose of the 2007 Policy is to provide a

> therapeutic living environment for patients in the [MSOP] that enhances their rehabilitation, to provide a safe and secure environment for all persons in MSOP facilities, and to comply with the provisions of Minnesota Statutes section 246B.04, subdivision 2 by restricting patients from possessing sexually explicit, obscene or pornographic materials in a way that is consistent with the constitutional rights of civilly-committed patients.

(*Id*., Ex. 1.)  The 2007 Policy goes on to state that

---

the clothed or unclothed pubic areas or buttocks of a human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.  (Emphasis added)

[3]

Minnesota Statute section 617.246, subdivision 1(f) provides:
"Pornographic work" means: (1) an original or reproduction of a picture, film, photograph, negative, slide, videotape, videodisc, or drawing of a sexual performance involving a minor; or (2) any visual depiction, including any photograph, film, video, picture, drawing, negative, slide, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means that: (i) uses a minor to depict actual or simulated sexual conduct; (ii) has been created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct; or (iii) is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexual conduct.

[c]ivilly committed patients retain their First Amendment rights, unless those rights are restricted for important and specified treatment or safety reasons. . . .  There is reasonable concern that some sexually explicit materials, which are otherwise legal, can increase the likelihood of assaultive or harassing behavior among committed patients.  These materials may also hinder a patient's rehabilitation.

(*Id.*)

The 2007 Policy divides all media material into one of three categories: prohibited, counter-therapeutic, and permitted.  (*Id.*)  Prohibited materials may not be possessed by any patient and are defined as:

1. Obscene materials, as defined in Minnesota Statutes section 617.241.
2. Illegal materials, such as those containing child pornography as defined in Minnesota Statutes section 617.246.
3. Any pictures, including pictures in reading materials, or videos of full or partially nude minor children with clearly visible genitals.
4. Any pictures, including pictures in reading materials, or videos of the unclothed or clothed figure of a minor child posing in a sexually suggestive posture or sexual manner.
5. Movies rated "NC-17" or "X."
6. Video games with an Entertainment Software Rating Board ("ESRB") rating of "AO."
7. Any pictures, including pictures in reading materials, or videos showing close-up depictions of
   a. sexual intercourse, including any type of vaginal, oral or anal penetration;
   b. human genitalia in a lewd and explicit fashion;
   c. masturbation;
   d. excretory functions;
   e. sexual relations between a human being and an animal; or
   f. sadomasochistic abuse.
8. Pictures, videos or reading materials that, taken as a whole, promote sexual violence child molestation, or incest or that, taken as a whole, predominantly and prominently display nudity, and have the primary purpose of sexual arousal, in a manner similar to adult oriented sexual magazines such as *Playboy*, *Penthouse* and *Hustler*.
9. Pictures of the patient's victims.
10. Otherwise permitted materials of the type that the patient has misused in the past, providing that the restriction is proportionate to the misuse.

(*Id.*)  Counter-therapeutic material may be possessed by patients, however, a decision by the patient

-4-

to possess counter-therapeutic materials will be noted in the patient's records. (*Id*.) A determination of counter-therapeutic materials will be conducted by or under the supervision of a competent mental health professional. (*Id*.) Any designation of material as counter-therapeutic must be accompanied by "articulated reasons." (*Id*.) Any material that has not been designated as either prohibited or counter-therapeutic will be designated as permitted. (*Id*.) Movies rated "G," "PG," or "PG-13," and video games with an ESRB rating of "EC," "E," E10+," or "T" are permitted material without any review by the MSOP staff. (*Id*.) Movies rated "R" and video games with a ESRB rating of "M" or "RP" must be reviewed by the MSOP staff to determine the appropriate classification, which is then compiled into a published list for other patients to utilize. (*Id*.)

MSOP staff apply the 2007 Policy rather than the statutory language of section 246B.04, subdivision 2 in determining whether materials are allowed or prohibited. (Mooney Aff., ¶ 15.) The MSOP has no intention of having staff members apply the statutory language of section 246B.04, subdivision 2 or any Minnesota Statute cited therein. (*Id*.)

### B.    The 2007 Policy As Applied To The Plaintiff.

Plaintiff is committed to the Minnesota Sex Offender Program ("MSOP") in St. Peter, Minnesota, as a Sexually Psychopathic Personality and a Sexually Dangerous Person.[4] Shortly after the Plaintiff's arrival at the MSOP, several images from the hard drive of his personal computer were seized that, while not obscene, were considered critical contraband under the 2004 Ban. After the 2007 Policy was put into place, the images that were seized were reviewed under the 2007 Policy. Of the 143 seized images, 127 images were returned to Plaintiff and 16 were designated as prohibited material. (Sixth Ivey Aff., Docket No. 97, ¶¶ 6-9.) The images that were previously

---

[4] *See In re Christopher Ivey*, 687 N.W.2d 666, 667 (Minn.Ct. App. 2004).

considered prohibited, but were returned to Plaintiff as permitted under the 2007 Policy, primarily consist of images of female buttocks and cleavage.  (*Id*. at ¶10.)

Plaintiff alleges that the 2007 Policy is applied in an arbitrary fashion.  Some movies with non-obscene nudity and simulated sex are being allowed under the 2007 Policy, while other movies with non-obscene nudity and simulated sex are being designated as prohibited.  (*Id*.  at ¶15.)  The lack of consistency in the 2007 Policy results in patients to avoid having videos reviewed out of fear that the movie will be considered prohibited or counter-therapeutic and this will be recorded to the patient's record.  (*Id*. at ¶14.)  The list of pre-reviewed movies  rated "R" and video games with a ESRB rating of "M" or "RP" still contains movies or video games with a lesser rating.  (*Id*. at ¶36.)  This is inconsistent with all movies or video games of a lesser rating being considered permitted under the 2007 Policy.

## II.  STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986).   Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

-6-

reasonably be resolved in favor of either party." *Id*. at 250.

## III.  DISCUSSION

### A.     Minnesota Statutes Are Presumed Constitutional

As an initial matter, the Court notes that Plaintiff bears a heavy burden in proving that section 246B.04, subdivision 2 is unconstitutional.  Minnesota statutes are presumed constitutional. *See McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn. 1984).  A court must proceed with extreme caution before declaring a statute unconstitutional and may do so only when absolutely necessary.  *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989).   The party challenging the constitutionality of a statute must prove beyond a reasonable doubt that the statute violates a constitutional provision.  *Id*. at 364.

### B.     A Modified Version of *Turner v. Safley* is the Appropriate Standard to Use in Evaluating Plaintiff's First Amendment Claims in the Present Case.

A modified version of *Turner v. Safley*, 482 U.S. 78 (1987) is the appropriate standard to evaluate Plaintiff's First Amendment claims in the present case.  In *Turner*, the Supreme Court address the unique problems posed in a prison setting and set out to formulate a standard of review for prisoners' constitutional claims to laws, policies and regulations governing prison management that responded to the "'policy of judicial complaints and [to] the need to protect constitutional rights.'"  *Id*. (quoting *Procunier v. Martinez*, 416 U.S. 396, 406 (1974)).  The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id*. at 89.   However, the MSOP is not a prison setting.  The Eighth Circuit has acknowledged that the liberty interests of civilly committed persons are "considerably less than those held by members of free society," but greater than those of a prison inmate.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  The Court will

proceed to analyze Plaintiff's First Amendment claim regarding section 246B.04, subdivision 2 under the *Turner* analysis with the Eighth Circuit's holding in *Senty-Haugen* as a guide. Since Plaintiff is a civilly committed patient at the MSOP, there are no legitimate penological interest, instead the Court will consider legitimate therapeutic interests. In order to determine whether the regulations at issue in the present case are reasonably related to legitimate therapeutic or institutional interests, the Court must weigh four factors: 1) whether there is a "valid, rational connection" between the regulation and "the legitimate governmental interest put forward to justify it"; 2) whether Plaintiff has alternative means of exercising his First Amendment rights; 3) the impact that accommodation of his First Amendment rights would have on guards and other patients, and on the allocation of the general resources of the institution; and 4) whether obvious, easy alternatives exist to meet the state's objectives. *See Turner*, 482 U.S. at 89-91.

It is undisputed under established First Amendment law that "obscene" materials and "pornographic work," as defined by Minnesota Statute section 167.241, subdivision 1 and Minnesota Statute section 617.246, subdivision 1(f), respectively, are unprotected speech. *See Osborne v. Ohio*, 495 U.S. 103 (1990)(child pornography is unprotected speech); *Miller v. California*, 413 U.S. 14, 23 (1973)(obscenity is unprotected speech). Therefore, the following analysis focuses solely on the extent to which section 246B.04, subdivision 2 reaches sexual expression that is not obscene and does not contain child pornography. Under section 246B.04, subdivision 2, persons committed as sexual psychopathic personalities or sexually dangerous persons are prohibited from possessing "material that depicts sexual conduct as defined under section 617.241, subdivision 1." Minn. Stat. §246B.04, subd. 2. In practice, "material that depicts sexual conduct" is evaluated by the 2007 Policy, which was informed by section 617.241, subdivision 1. Under the 2007 Policy, patients are

allowed to possess material that could be considered prohibited under section 617.241, subdivision 1.

In so far as Plaintiff seeks to challenge portions of section 246B.04, subdivision 2 that are not embodied in the 2007 Policy, he seeks to pursue a pre-enforcement challenge. "Even in the First Amendment context, such a challenge presents a justiciable controversy only if the probability of enforcement is 'real and substantial.'" *Amatel v. Reno*, 156 F.3d 192, 195 (D.C. Cir. 1998). Since the enactment of the 2007 Policy as a result of the settlement of the litigation with Kruger, there is no risk that the statute will be enforced pursuant to the language in section 617.241, subdivision 1. Therefore, the Court's analysis under *Turner* will narrowly consider the statutory prohibition against "material that depicts sexual conduct" as defined in the 2007 Policy.

### 1. Minnesota Statute Section 246B.04, subdivision 2, Is Rationally Related to Legitimate Government Interests.

Defendants argue that section 246B.04, subdivision 2, on its face, and as applied by the terms of the 2007 Policy, further "at least two legitimate goals: 1) to create and maintain an atmosphere that is conducive to the therapeutic goals of treating Minnesota's most dangerous and compulsive sex offenders; and 2) to reduce the danger of sexual aggression toward other civilly committed patients or staff members." (Def.'s Mem. at 21.) In determining whether a certain provision is rationally related to a legitimate government interest, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner* at 89-90. Furthermore, "the governmental objective must be a legitimate and neutral one . . . [and] it [is] important to inquire whether . . . regulations restricting inmates' First Amendment rights operate[ ] in a neutral fashion, without regard to the content of the expression." *Id*. at 90.

The prohibition against the possession of material depicting sexual conduct in section 246B.04, subdivision 2 as defined in the 2007 Policy promotes the legitimate governmental interests set forth by the Defendants.  In support of the logical connection between the 2007 Policy and the asserted goals, the Government has submitted the Affidavit of Elizabeth Barbo, Ph. D., LP.  Dr. Barbo is the Director Psychological Services for the MSOP.  (Barbo Aff., Docket. No. 85, ¶2.) Dr. Barbo states that avoidance of situations that may trigger patients to relapse is a crucial portion of the therapeutic program.  (*Id*. at ¶13.) Dr. Barbo states that sexually arousing material functions as a trigger for many patients at the MSOP with different forms of sexually arousing material functioning as a trigger for individual patients.  (*Id*. at ¶18.) Dr. Barbo also states that sexually graphic material cannot be allowed on an individualized basis because patients sell or trade pornography to other patients.  (*Id*. at ¶21.) It is Dr. Barbo's opinion, after treating Plaintiff, that increased exposure to sexually explicit materials, especially violent pornography is not consistent with Plaintiff's rehabilitation attempts.  (*Id*. at ¶30.) More generally, Dr. Barbo supported her opinions with three articles that stand for the proposition that pornography is associated with sexual aggression, particularly in men with a history of sexual aggression, such as the patients at the MSOP.  (*Id*. at ¶¶ 31-41, Ex. 1-3.)

In light of the professional opinions of Dr. Barbo and the academic research that supports her opinions, section 246B.04, subdivision 2 as implemented through the 2007 Policy bears a logical and rational relationship "1) to creat[ing] and maintain[ing] an atmosphere that is conducive to the therapeutic goals of treating Minnesota's most dangerous and compulsive sex offenders; and 2) to reduce the danger of sexual aggression toward other civilly committed patients or staff members."

### 2. Plaintiff Does Have Alternative Means of Exercising His First Amendment Rights.

-10-

The second factor under *Turner* requires a determination of whether there are alternative means of exercising his First Amendment rights. *Turner*, 482 U.S. at 90. In *Thornburgh v. Abbott*, the United States Supreme Court held that Plaintiff's alternative means of exercising his First Amendment rights "must be viewed sensibly and expansively." 490 U.S. 401, 417 (1989).

Under section 246B.04, subdivision 2, as implemented through the 2007 Policy, the Plaintiff has access to a wide array of material of a sexual nature. Plaintiff has access to all scenes of a sexual nature depicted in movies rated "G," "PG," and "PG-13." Plaintiff and other patients have access to material of a sexual nature found in some movies rated "R." Furthermore, as evidenced by the photos returned to Plaintiff when the 2007 Policy was implemented, he has access to many photographs of women photographed in a sexual nature. (*See* Ivey Sixth Aff., Ex. 2.) Lastly, the 2007 Policy does not ban all nudity, but rather only close-up photographs of "human genitalia of a lewd and explicit fashion" or material that "predominantly and prominently display nudity , and have the primary purpose of sexual arousal." Section 246B.04, subdivision 2 as implemented through the 2007 Policy, allows the Plaintiff and other patients alternative means of accessing material of a sexual nature.

3.      **Accommodating Plaintiff's First Amendment Rights Would Adversely Impact Other Patients, Guards, and the Allocation of the General Resources of the Institution.**

The third factor under *Turner* "is the impact accommodation of the asserted constitutional right will have on [MSOP] staff and other [patients], and on the allocation of [MSOP] resources generally." *Turner*, 482 U.S. at 90.  In her affidavit, Dr. Barbo states that the presence of sexually graphic material would have an adverse impact on patients that must avoid sexually graphic material to avoid a potential relapse.  Given the wide array of different patients at the MSOP and the wide range of possible triggers for each patient, it would pose an incredible burden on the MSOP staff to accommodate each Plaintiff by allowing them access to material that would not trigger a relapse. Patients at the MSOP have been known to trade pornographic material, therefore it would be a substantial burden on the MSOP staff to ensure that pornographic material is not provided to a patient for who the material would be counter-therapeutic.

More generally, Dr. Barbo opined and provided academic studies that found sexually graphic material associated with sexual aggression, especially amongst person like those at the MSOP. Allowing material that is associated with sexual aggression in the MSOP patient population would be detrimental to all persons at the MSOP.  Further, a greater investment of MSOP resources would be required to deal with instances of sexual aggression.

4.      **The Challenged Statute Does Not Represent an Exaggerated Response to the MSOP's Legitimate Interests.**

The fourth factor in the *Turner* analysis requires a determination of whether there are alternatives that can accommodate the right at *de minimis* cost to valid [therapeutic] interests. *Id*. at 91.  When testing a statute, a court must only inquire whether the law is not an exaggerated response to the treatment program's legitimate interest in advancing patient treatment goals and

-12-

maintaining facility security.  *Id*. at 90-91.  This is not a least restrictive alternative test.  *Id*.

The implementation of the section 246B.04, subdivision 2 as implemented through the 2007 Policy, is not an exaggerated response to the MSOP's legitimate interests.  The 2007 Policy defines a wide array of material that is not subject to review based upon motion picture or ESRB ratings. Further, the 2007 Policy affords patients the ability to maintain material that is counter-therapeutic to their own person treatment plan, but not generally inconsistent with all other patients treatment plans.  Furthermore, the 2007 Policy aims for providing advance notice of permitted or prohibited material through the publication of the classifications of pre-reviewed movies and video games.  The 2007 Policy is a not an exaggerated response to the valid therapeutic interests of the MSOP.

A balancing of all four factors articulated by *Turner*, supports a conclusion that the challenged statute is constitutional.  Accordingly, Defendants' Motion for Summary Judgment [#82] should be granted.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Defendants' Motion for Summary Judgment [#82] should be **GRANTED**.

2. Plaintiff's Notice of Motion and Cross-Motion for Summary Judgment[#81] should be **DENIED**.

DATED: August 18, 2008                   *s/ Franklin L. Noel*
                                         FRANKLIN L. NOEL
                                         United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 5, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.